UNITED STATES DISTRICT COURT
SOUTHISN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JERRY M. ZEILINGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02429-JMS-MPB |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Jerry Zeilinga filed an application for disability insurance benefits in April 2014, [Filing No. 8-5 at 2], alleging a disability onset date of March 1, 2011, [Filing No. 8-6 at 2]. His application was denied initially, [Filing No. 8-3 at 2], and upon reconsideration, [Filing No. 8-3 at 10]. Administrative Law Judge Ronald T. Jordan ("ALJ") held a hearing on November 2, 2016. [Filing No. 8-2 at 30-45.] On January 18, 2017, the ALJ issued an opinion concluding that Mr. Zeilinga was not disabled as defined by the Social Security Act. [Filing No. 8-2 at 15-26.] The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 8-2 at 2-7.] Mr. Zeilinga timely filed his Complaint pursuant to 42 U.S.C. § 405(g), asking this Court to review his denial of benefits. [Filing No. 1.]

**I.
STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.

The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable

impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Zeilinga was 58 years old at the time he applied for Social Security benefits. [Filing No. 8-5 at 2.] He completed tenth grade and previously worked as a greaser, where he fueled and lubricated heavy equipment. [Filing No. 8-6 at 6-7.][1]

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Mr. Zeilinga is not disabled. [Filing No. 8-2 at 15-29.] The ALJ found as follows:

---

[1] Both parties provided a detailed description of Mr. Zeilinga's medical history and treatment in their briefs. [Filing No. 14; Filing No. 18.] Because that discussion implicates sensitive and otherwise confidential medical information, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

3

- At Step One, the ALJ found that Mr. Zeilinga has not engaged in substantial gainful activity from March 1, 2011, the alleged onset date, through December 31, 2016, the date last insured. [Filing No. 8-2 at 20.]

- At Step Two, the ALJ found that Mr. Zeilinga has the following severe impairments: "arthritis, mild obesity, sleep apnea, restless legs syndrome and high blood pressure." [Filing No. 8-2 at 20.]

- At Step Three, the ALJ found that Mr. Zeilinga does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 8-2 at 21-22.]

- After Step Three but before Step Four, the ALJ found that Mr. Zeilinga has the RFC to

  perform medium work . . . as the claimant can occasionally lift and carry, push and/or pull up to 50 pounds and he can frequently lift and/or carry, push and/or pull up to 25 pounds. The claimant can also stand, walk and sit for up to six hours during an eight-hour workday and the claimant can occasionally balance, stoop, crouch, crawl, kneel and climb.

  [Filing No. 8-2 at 5 (citation omitted).]

- At Step Four, after considering Mr. Zeilinga's age, education, work experience, and RFC, and relying on the testimony of the vocational expert ("VE"), the ALJ concluded that Mr. Zeilinga is capable of performing his past relevant work as a "greaser," as generally performed in the economy. [Filing No. 8-2 at 8.] The ALJ concluded on that basis that Mr. Zeilinga was not disabled and therefore did not proceed to Step Five. [Filing No. 8-2 at 8.]

Mr. Zeilinga asked the Appeals Council to review the ALJ's decision, but that request was denied, making the ALJ's decision the final decision of the Commissioner subject to judicial

review. [Filing No. 8-2 at 2-8.] Mr. Zeilinga filed this lawsuit pursuant to 42 U.S.C § 405(g), [Filing No. 1], and his request for review is ripe for decision.

## III.
### DISCUSSION

Mr. Zeilinga raises two arguments as to why the Court should vacate the Commissioner's decision. First, Mr. Zeilinga argues that the ALJ failed to consider his polycythemia diagnosis in evaluating his limitations. Second, Mr. Zeilinga argues that the ALJ failed to adequately address the opinion of the consultative examiner. The Court addresses each of Mr. Zeilinga's arguments in turn.

### A. Polycythemia Diagnosis

Mr. Zeilinga first argues that the ALJ failed to consider his polycythemia diagnosis in assessing his impairments. [Filing No. 14 at 12-14.] Mr. Zeilinga argues that the ALJ discredited his allegations of joint pain and fatigue in part due to a lack of objective evidence. [Filing No. 14 at 12-14.] According to Mr. Zeilinga, his polycythemia diagnosis supports these complaints and the failure to consider it may have affected the ALJ's assessment. [Filing No. 14 at 12-14.]

The Commissioner, in response, does not address Mr. Zeilinga's argument. [*See* Filing No. 18 at 4-5.] Instead, the Commissioner argues that Mr. Zeilinga "does not cite a single record showing that he received a medical diagnosis of polycythemia" and that the "ALJ reasonably declined to include polycythemia as a severe impairment at Step Two." [Filing No. 18 at 4-5.]

In reply, Mr. Zeilinga points out that the ALJ erred not in failing to classify polycythemia as a severe impairment at step two, but in failing to consider the diagnosis whatsoever in assessing his impairments. [Filing No. 21 at 4-5.] Mr. Zeilinga reiterates that he was diagnosed with polycythemia and underwent phlebotomy to treat the condition. [Filing No. 21 at 5.]

5

In April 2015, Dr. Fadi Hayek assessed Mr. Zeilinga with "[p]olycythemia most likely secondary to obstructive sleep apnea."[2] [Filing No. 8-7 at 94.] Dr. Hayek "advised [Mr. Zeilinga] to use CPAP" and scheduled tests to "rule out other etiologies of polycythemia such as polycythemia vera." [Filing No. 8-7 at 94.] Dr. Hayek scheduled a "phlebotomy program to keep hematocrit below 52, or below the level of symptoms." [Filing No. 8-7 at 94.] Testing confirmed that Mr. Zeilinga had "[p]olycythemia secondary to obstructive sleep apnea and smoking." [Filing No. 8-7 at 86.] Mr. Zeilinga had an "excellent response to single session phlebotomy" and Dr. Hayek ordered additional phlebotomy "to keep hematocrit below 52." [Filing No. 8-7 at 87.]

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding. But an ALJ need not mention every piece of evidence, so long as [the ALJ] builds a logical bridge from the evidence to [the] conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citations omitted). The ALJ's credibility assessment "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning," and is reviewed for patent error. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Where an ALJ relies upon objective medical evidence to discredit a claimant, the ALJ must discuss all "relevant diagnoses" supporting the claimant's complaints. *Id.* at 679.

---

[2] Polycythemia is a blood disease in which the body creates too many red blood cells, making the blood thicker and increasing the risk of blood clots. U.S. Dep't of Health & Human Services, NIH National Heart, Lung, and Blood Institute, *Polycythemia Vera*, https://www.nhlbi.nih.gov/health-topics/polycythemia-vera. Unlike primary polycythemia, which is caused by a genetic mutation, secondary polycythemia is usually caused by "[l]ong-term exposure to low oxygen levels," and is more common in "[p]eople who smoke, spend long hours at high altitudes, or are exposed to high levels of carbon monoxide where they work or live." *Id.* Common symptoms include dizziness, shortness of breath, pressure in the abdomen, and fatigue. *Id.*

The Court has "greater freedom to review the ALJ's decision" where it is "based upon objective factors rather than subjective considerations." *Id.* at 678.

The Commissioner's sole defense of the ALJ's omission of Mr. Zeilinga's polycythemia diagnosis is her contention that Mr. Zeilinga was never diagnosed with polycythemia. This, of course, is not the case. Rather, Dr. Hayek diagnosed Mr. Zeilinga with secondary polycythemia in April 2015 and prescribed phlebotomy to treat the condition. The Court may not conclude on this record that this omission was harmless. First, while Dr. Hayek found the phlebotomy treatment to be effective, the Court may not assess this evidence in the first instance. *Cf. Proschaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (noting that reviewing courts may not "reweigh the evidence"). Moreover, the Commissioner does not raise a harmless error argument, instead unavailingly challenging the polycythemia diagnosis itself. Any harmless error argument is therefore waived. Second, as Mr. Zeilinga argues, the secondary polycythemia diagnosis supports his allegations of pain and fatigue and undermines the ALJ's reliance upon "the medical evidence" to discredit Mr. Zeilinga's complaints. [Filing No. 8-2 at 23.] The diagnosis is also consistent with the assessment of the consultative examiner, which was also discredited by the ALJ and which documented "signs of fatigue with minimal exertion." [Filing No. 8-9 at 3.] Therefore, the Court concludes that the ALJ's failure to address Mr. Zeilinga's secondary polycythemia diagnosis requires remand.

### B. Consultative Examiner

Next, Mr. Zeilinga argues that the ALJ improperly discredited the consultative examiner's findings. [Filing No. 14 at 8-12.] Specifically, Mr. Zeilinga argues that the ALJ failed to address the consultative examiner's findings that Mr. Zeilinga required reaching and handling restrictions

and improperly resolved the internal tension in the consultative examiner's finding regarding the weight Mr. Zeilinga may lift. [Filing No. 14 at 8-12.]

In response, the Commissioner argues that the ALJ "extensively discussed" and reasonably assessed the consultative examiner's opinions. [Filing No. 18 at 7.] The Commissioner argues that the ALJ's assessment is supported by the other medical evidence in the record. [Filing No. 18 at 8-11.]

Mr. Zeilinga reiterates his arguments in reply and argues that the Commissioner has conceded that the ALJ failed to address the consultative examiner's opinion regarding his ability to reach, handle, and finger. [Filing No. 21 at 1-4.]

"An ALJ must consider all medical opinions in the record," *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing 20 C.F.R. § 404.1527(b)-(c)), and may "reject an examining physician's opinion only for reasons supported by substantial evidence in the record. . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). The ALJ is required to "weigh[] conflicting evidence from medical experts" and "decide, based on several considerations, which doctor to believe." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Among these considerations are whether the doctor has examined the claimant, whether there is a treatment relationship, and whether the doctor's opinions are supported and consistent with the record. 20 C.F.R. § 404.1527(c). The ALJ's decisions must be upheld if supported by "substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

The Court agrees with the Commissioner that the ALJ's resolution of Mr. Zeilinga's lifting capacity does not, on its own, constitute reversible error. The consultative examiner opined in the section labeled "Medical Source Statement" that Mr. Zeilinga could "[l]ift/carry 30 pounds on an

occasional basis." [Filing No. 8-9 at 4.] However, in the "Medical Source Statement," the consultative examiner opined that Mr. Zeilinga can occasionally lift or carry up to 50 pounds. [Filing No. 8-9 at 6.] The ALJ assessed Mr. Zeilinga with a 50-pound restriction, rejecting the consultative examiner's opinion that he was limited to 30 pounds. In support, the ALJ noted the internal inconsistency in the consultative examiner's opinion, a lack of support and explanation for the opinion, and contradictory evidence from the state agency consultants (who each assessed a 50-pound limit) and another doctor. [Filing No. 8-2 at 24.]

While Mr. Zeilinga argues that the ALJ should have contacted the consultative examiner to resolve the inconsistency between the 50- and 30-pound restrictions, the ALJ's resolution of the discrepancy is supported by substantial evidence. As the ALJ noted, the consultative examiner's opinion is internally inconsistent, and internal inconsistencies are appropriately considered under 20 C.F.R. § 404.1527(c). Additionally, while it is possible that the consultative examiner's opinion contains some support for a 30-pound restriction, [*see* Filing No. 8-9 at 3-4 (noting that Mr. Zeilinga has absent reflexes in the knee and elbow and is "[u]nable to tandem walk[] and squat")], the ALJ also appropriately concluded that the opinion lacked any explanation. When asked to "[i]dentify the particular medical or clinical findings . . . which support your assessment," the consultative examiner wrote only: "History and physical." [Filing No. 8-9 at 6.] Finally, the ALJ cited to other medical evidence which supported his opinion, including Dr. Talessa Powell's physical examination finding that Mr. Zeilinga had a "[n]ormal musculature" with "normal range of motion," [Filing No. 8-8 at 20], and the 50-pound lifting restrictions found by the state agency reviewing physicians, [Filing No. 8-3 at 6; Filing No. 8-3 at 15]. The ALJ's decision to reject the 30-pound restriction was supported by substantial evidence, as the ALJ reasonably weighed the evidence and identified several shortcomings in the consultative examiner's opinion. On remand,

9

however, the ALJ is free to further consider the lifting restriction, particularly in light of the secondary polycythemia diagnosis discussed above.

In contrast, however, the ALJ failed to reach a reasoned decision in rejecting the consultative examiner's proposed manipulation limitations. The consultative examiner restricted Mr. Zeilinga to occasional reaching, handling, and fingering in both hands. [Filing No. 8-9 at 8.] While the consultative examiner again did not elaborate upon his rationale for these restrictions, writing that the "[h]istory and physical" supported his assessment, [Filing No. 8-9 at 8], the consultative examiner also observed that Mr. Zeilinga has "moderate difficulty" in buttoning, zipping, and picking up coins and has "[s]ensation loss in hands," [Filing No 8-9 at 4]. Unlike with the lifting restriction, where the ALJ provided a reasonable explanation for crediting one assessment over another based upon internal inconsistencies and contrary evidence, here the ALJ ignored altogether the evidence that Mr. Zeilinga requires a manipulation restriction. Instead, the ALJ incorrectly stated that "there is no medical evidence showing that the claimant is unable to perform fine . . . movements effectively." [Filing No. 8-2 at 21.] The ALJ's rejection of a manipulation restriction lacks support and must be revisited on remand.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Zeilinga benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 4/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**